

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JUDY N. PREE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-CV-723-TH |
| | § | JURY |
| | § | |
| FARMERS INSURANCE EXCHANGE, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an age discrimination suit arising out of plaintiff Judy N. Pree's employment with defendant Farmers Insurance Exchange. *See Plaintiff, Judy N. Pree's, First Amended Complaint* [Clerk's Docket No. 9].

Plaintiff began working for Farmers in 1993 as a mail clerk. She was subsequently promoted to the position of field claims representative. *Id.* at ¶ 8. The conduct of which Pree complains began in July 2009, after over fifteen years of employment with Farmers. Her initial charge complained of events occurring while she was under the supervision of Eric Dearing, and includes:

- a statement by Dearing in a meeting that persons eligible for retirement should take it;
- Pree received negative field evaluations;
- Pree was prevented from taking certification tests for promotions;
- Pree was treated differently from a similarly situated younger co-worker who was allowed to work from the hospital when her child became ill while Pree was not afforded this opportunity when her husband had a heart attack; and

- Pree was disciplined for requesting that customers return surveys when younger employees were not reprimanded for the same conduct.

*Id.* at ¶¶ 9-13. After complaining to management about this treatment by Dearing, Pree's supervision was reassigned on April 1, 2010 to Cary Scott Robertson. According to Pree, the discrimination based on her age continued. In support of this position, she submits that Robertson:

- criticized Pree on "every little work related issue he could find;"
- spoke to Pree in a demeaning way;
- threatened Pree with write ups;
- took the younger members of the team to a company training designed to help employees improve performance and customer satisfaction ratings; and
- placed Pree on probation for not meeting her performance goals when other younger employees were not placed on probation for not meeting their performance goals.

*Id.* at ¶ 15.

On April 2, 2010, Pree filed a charge of discrimination alleging discrimination based on her age of 55. She represented that the discriminatory actions began on July 13, 2009 and continued through April 2, 2010. On August 10, 2010 she disclosed to upper management that she had filed a charge of discrimination. *Plaintiff, Judy N. Pree's, First Amended Complaint* at ¶ 14 [Clerk's Docket No. 9]. The EEOC issued Pree a right to sue letter on August 13, 2010. She subsequently filed a second Charge of Discrimination on October 27, 2010 alleging retaliation for engaging in a protected activity. On October 20, 2010 Pree was terminated.

Pree filed suit in this Court on November 10, 2010. *See Complaint* [Clerk's Docket No. 1]. She alleged four violations of the AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA), codified at 29 U.S.C. § 621 *et seq.* Pree first alleged a disparate impact claim that Farmers engaged in age-neutral

practices that had a disparate impact on older workers. Second, Pree alleged that Farmers violated the ADEA by subjecting her to a hostile work environment. Third, she alleged a disparate treatment claim, that is that Farmers discriminated against her because of her age. And fourth, Pree alleged Farmers retaliated against her for filing a charge of discrimination complaining of age discrimination. She also brought a claim for intentional infliction of emotional distress arising under Texas law. *See Plaintiff, Judy N. Pree's, First Amended Complaint* at ¶¶ 17-25 [Clerk's Docket No. 9].

This Court convened a case management conference and entered a scheduling order on March 29, 2011. The Court set *inter alia* the following deadlines in that order:

| | |
|---|---|
| June 13, 2011 | last date to file motions for summary judgment |
| August 18, 2011 | discovery to be complete |
| September 19, 2011 | date parties should be prepared to try case |

*See Scheduling Order* [Clerk's Docket No. 20]. On June 9, 2011 this Court amended the scheduling order to extend certain deadlines because the plaintiff had not timely completed case specific disclosure and had delayed providing certain required authorizations to defendant. The new deadlines were as follows:

| | |
|---|---|
| July 22, 2011 | last date to file motions for summary judgment |
| September 12, 2011 | discovery to be complete |
| October 17, 2011 | date parties should be prepared to try case |

On July 22, 2011 Farmers filed *Defendant's Motion for Summary Judgment*.[Clerk's Docket No. 28]. Pree filed a motion to continue the submission date for plaintiff's response to the motion for summary judgment pursuant to Rule 56(e) on the ground that:

> Plaintiff cannot respond to Defendant's motion for summary judgment by August 8, 2011 because there is [sic] outstanding Request for Production, and written interrogatories responses which are due on August 13, 2011. The responses to the

discovery are curcial [sic] to the case. FED. R. CIV. P. 56(f)(2) [sic]. *See Opposed Motion to Continue* at ¶ 8 [Clerk's Docket No. 29]. Over defendant's objection directed at the plaintiff's delay in propounding discovery requests, the Court extended the submission date for plaintiff's response to September 12, 2011. *See Order* [Clerk's Docket No. 34]. During that time, defendant Farmers responded to the interrogatories and requests for production and Pree took five (5) depositions, including the depositions of Pree's former supervisors.

Even so, Pree requested "deference on her ability to respond thoroughly to the summary judgment motion" based upon outstanding discovery. *See Memorandum in Response to Motion for Summary Judgment* at ¶¶ 5-6 [Clerk's Docket No. 29]. Despite this request, she did not indicate what additional evidence she needed, how such evidence would create a fact issue for trial or file an affidavit to that effect. On September 23, 2010, Pree filed a sur-reply and additional evidence in opposition to the motion for summary judgment. *See Plaintiff's Surreply, Sealed Additional Attachments* [Clerk's Docket Nos. 40 and 41].

## II.  LEGAL STANDARD

Summary judgment is appropriate where, considering all the allegations in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986). If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial. *Steadman v. Texas*

*Rangers,* 179 F.3d 360, 366 (5th Cir. 1999).

Where a defendant moves for summary judgment on an employment discrimination claim based on circumstantial evidence, the Court utilizes the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Turner v. Kansas City Southern Ry. Co.,* 675 F.3d 887, 892 (5th Cir. 2012). The first step of the *McDonnell Douglas* analysis requires "[t]he plaintiff [to] establish a *prima facie* case that the defendant made an employment decision that was motivated by a protected factor." *Id. (quoting Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1089 (5th Cir.1995)). If the plaintiff establishes a *prima facie* case, the court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* If the defendant carries its burden, the analysis moves to the third *McDonnell Douglas* step, where "[t]he burden ... shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.*

### III. LEGAL BACKGROUND

Under the ADEA, "[i]t shall be unlawful for an employer to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). To prove an age discrimination claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* (*quoting Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78; 129 S. Ct. 2343, 2351 (2009).

In contrast to Title VII and other federal anti-discrimination laws, a claim is not actionable under the ADEA where the otherwise prohibited "differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1); *see Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233, 125 S.Ct. 1536, 1540-41(2005). "Congress' decision to limit the coverage of the ADEA by including the RFOA provision is consistent with the fact that age, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment." *Id.*

To establish a *prima facie* case of disparate treatment age discrimination, the plaintiff must show that: (1) she belongs to a protected group of persons over the age of forty (40); (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

Although an age discrimination claim may be based on the disparate impact on older workers of an otherwise age-neutral employment practice, it is not enough to simply allege a disparate impact on older workers or point to a generalized policy that leads to such an impact. *Smith v. City of Jackson*, 544 U.S. at 241, 125 S. Ct at 1545. It is incumbent on the employee to "isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Id.* (emphasis in original). "Identifying a specific practice is not a trivial burden." *Meacham v. Knolls Atomic Power Laboratory,* 554 U.S. 84, 101, 128 S.Ct. 2395, 2406 (2008).

A hostile work environment claim is cognizable under the ADEA. *Dediol v. Best Chevrolet, Inc.,* 655 F.3d 435, 441 (5th Cir. 2011). The elements of a *prima facie* hostile work environment age claim are as follows: (1) plaintiff was over the age of forty (40); (2) she was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Id.* To be actionable, the workplace environment must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada,* 591 F.3d 761, 771 (5th Cir. 2009). Moreover, the complained-of conduct must be both objectively and subjectively offensive. *Id.; see also EEOC v. WC&M Enters.,* 496 F.3d 393, 399 (5th Cir. 2007). This means that not only must a plaintiff perceive the environment to be hostile, but it must also appear hostile or abusive to a reasonable person. *Id.* To determine whether conduct is objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* No single factor is determinative. *Id.*

A *prima facie* case of retaliation requires the plaintiff to prove that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse employment action. *Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008).

Recovery for the tort of intentional infliction of emotional distress under Texas law requires proof that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and

outrageous; (3) the defendant's actions caused the plaintiff emotional distress and; (4) the resulting distress was severe. *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 136 (5th Cir. 2004)(citing *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)). "In determining whether alleged conduct is sufficiently outrageous to fall under the ambit of the cause of action, the Texas courts have warned that the conduct must have been "'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id. (citing Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993)). Whether conduct may reasonably be regarded as extreme and outrageous is a question of law for the courts." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). Intentional infliction of emotional distress has been described as a "gap-filler" tort that cannot be used to supplant or supplement statutory or common-law remedies. *See Hoffman-La Roche Inc. v. Zeltwinger*, 144 S.W.3d 438, 447 (Tex. 2004)(stating intentional infliction of emotional distress is "for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress").

## IV.  ANALYSIS

A.     <u>Disparate Impact Under the ADEA</u>

Plaintiff has not come forward with a *prima facie* case of disparate impact on older workers of an otherwise facially neutral employment practice.

As initial matter, plaintiff has not come forward with evidence of observed statistical disparities suggesting age discrimination by Farmers. Nor has Pree identified a specific policy that disparately

impacted workers older than 40. As previously noted, it is not enough to simply allege that there is a disparate impact on older workers or point to a generalized policy that leads to such an impact. *Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S. Ct 1536 (2005). It is incumbent on the employee to "isolat[e] and identif[y] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Id.* (emphasis in original). "Identifying a specific practice is not a trivial burden." *Meacham v. Knolls Atomic Power Laboratory,* 554 U.S. 84, 101, 128 S.Ct. 2395, 2406 (2008). Here, Pree has not alleged that any of the alleged conduct had an observed statistical disparity in its effect on older workers, as opposed to an impact on her alone. Instead, she has only alleged that there was a disparate impact on her:

> Plaintiff alleges that Defendant, Farmers Insurance Exchange, by and through Defendant's agents, willfully violated the protected rights of Plaintiff because of her age. In addition, the unlawful employment practices of Defendant, Farmers Insurance Exchange, specifically mentioned above, had a disparate and adverse impact on the Plaintiff an older worker. Such employment practices were not based on any reasonable factor other than age.

*See Plaintiff's First Amended Complaint* at ¶ 20.

Because the plaintiff has failed to state a *prima facie* case of disparate impact discrimination, Farmers is entitled to entry of summary judgment on that claim.

B.      Hostile Work Environment Under the ADEA

The conduct alleged by Pree in support of her hostile work environment claim fails to state a claim for hostile work environment as a matter of law. To rise to the level of a hostile work

environment, harassment must be so severe or pervasive that it alters the conditions of employment and creates an abusive working environment. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001). In evaluating the conduct at issue, courts should consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systs., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993).

In this case, the summary judgment record shows only that Pree was criticized for her job performance. There is no suggestion that she was ever subjected to physical threats, vulgar language or humiliating conduct. She points to no authority supporting her argument that negative job performance evaluations of the nature alleged here alone can create a hostile work environment.

Because plaintiff has failed to state a *prima facie* case of a hostile work environment based upon age, Farmers is entitled to summary judgment on Pree's claim that Farmers violated the ADEA by subjecting her to a hostile work environment.

C.  Disparate Treatment Under the ADEA

To establish a *prima facie* case of disparate treatment age discrimination, Pree must show that (1) she is a member of the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age. *See Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds*, 544 U.S. 228, 125 S. Ct. 1536

(2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

Pree has not come forward with a *prima facie* case of disparate treatment under the ADEA. She has not shown that she remained qualified for her position; nor has she shown that she was replaced by someone under the age of 40, replaced by someone younger, or otherwise discharged because of her age.

Even if the Court were to assume for purposes of this motion that Pree established a *prima facie* case of discrimination, Farmers has come forward with evidence of legitimate, nondiscriminatory reasons for its actions. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008). Farmers has submitted competent summary judgment evidence that Pree failed to meet job performance expectations in 2009 and 2010. Her evaluations from this time reflect concerns relating to her customer service skills, efficiency, organization, and the level of assistance she needed to complete her job responsibilities. Defendant has also shown that Pree received two counseling memorandums during this period, one for violating Farmers' claims-handling practices regarding customer satisfaction surveys and one for yelling at her supervisor. She was also formally warned for failing to meet performance standards with respect to estimate accuracy, total loss accuracy, time management and need for support. After she was placed on probation, Pree's job performance continued to decline in certain areas, including failing to contact customers, rental car delays and unprofessional conduct.

Once the defendant comes forward with legitimate, non-discriminatory reasons for its actions,

the burden shifts to plaintiff to demonstrate that the proffered reasons are pretextual or that, while the preferred reasons are true, her age was nevertheless a motivating factor in Farmers' decision. *Rachid v. Jack In the Box,* 376 F.3d at 312-13. This plaintiff has not done.

Because plaintiff failed to state a *prima facie* case of discrimination, demonstrate pretext or show that age was a motivating factor for the conduct on question,. Farmers is entitled to summary judgment on Pree's disparate treatment age discrimination claim.

D.  Retaliation

In her amended complaint, Pree added a claim that Farmers retaliated against her because she filed a charge of discrimination. *Amended Complaint and Jury Demand*,¶ 21–22 [Clerk's Docket No. 9].

To establish a *prima facie* case of retaliation, Pree must demonstrate that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The burden of production then shifts to Farmers to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Once Farmers does so, the inference of discrimination created by the *prima facie* case disappears, and the ultimate question becomes whether the protected conduct was the "but for" cause of the adverse employment action. *Id.* "While this portion of the analysis may seem identical to the 'casual link' step in the *prima facie* case, the burden here is more stringent." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001).

As set forth in the preceding section addressing Pree's disparate treatment claim, Farmers has come forward with competent summary judgment evidence supporting that the employment decisions were based on legitimate, non-discriminatory reasons and not in retaliation for filing a charge of discrimination with the EEOC. It is worth noting that the nondiscriminatory reasons for disciplining Pree arose well before she filed a charge of discrimination. Moreover, the bulk of the conduct of which she complains occurred prior to August 10, 2010, which is the date on which Pree alleges that she disclosed the filing of the charge..

For all these reasons, Farmers is entitled to summary judgment on Pree's retaliation claim.

E.  Intentional Infliction of Emotional Distress Under Texas Law

Recovery for the tort of intentional infliction of emotional distress under Texas law requires proof that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress and; (4) the resulting distress was severe.

As a matter of law Pree has failed to plead that Farmers' alleged conduct was extreme and outrageous. She complains that:

> Defendant Farmers Insurance Exchange, intentionally or recklessly engaged in an unlawful activity of age discrimination and retaliation. The Defendant even advised Plaintiff to request customer satisfaction survey and then gave the Plaintiff a written reprimand for following the advice. Then Defendant instituted a campaign of consistently and repeatedly criticizing the plaintiff for every little work related issue, constantly threatening her with write ups. Finally, the Defendant terminated her after 18 years of service to the Defendant. Defendant's conduct was extreme and outrageous

and proximately caused Plaintiff severe emotional distress.

*See Plaintiff's First Amended Complaint and Jury Demand* at ¶ 25 [Clerk's Docket No. 9]. Such facts do not rise to the level of extreme and outrageous conduct as a matter of law. Claims for intentional infliction of emotional distress will not lie for mere "employment disputes, and the range of behavior covered in "employment disputes" is quite broad. *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33-34 (5th Cir. 1992). This is because an employer must be able to supervise, review, criticize, demote, transfer and discipline employees in order to properly manage its business. *Id.* That such actions are unpleasant for the employee does not make such conduct actionable.

Caution must be exercised "to ensure that the employment-at-will doctrine is not undermined, and that the defendant is not subjected to a potential jury trial arising out of virtually every discharge." *Yelverton v. Graebel/Houston Movers. Inc.*, 121 F. Supp. 2d 604, 612 (*citing McKethan v. Texas Farm Bureau*, 996 F.2d 734, 742 (5th Cir. 1993)). Accordingly, "the Fifth Circuit has insisted that the conduct be intentional and systematic degradation and humiliation ... or reprehensible conduct utterly intolerable in a civilized society." *Id.* (*citing Wilson v. Monarch Paper Co., 885 F. 2d 1138, 1145 (5th Cir. 1991); Dean v. Ford Motor Credit Co., 885 F.2d 300, 306–07 (5th Cir. 1989); GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (*quoting Twyman*, 855 S.W.2d at 621)).

Pree's allegations fail to state "intentional and systematic degradation and humiliation" or "reprehensible conduct utterly intolerable in a civilized society." *See Yelverton*, 121 F. Supp. 2d at 612. The same is true of Pree's allegation that she was "consistently and repeatedly criticiz[ed]" and "threaten[ed] with write ups." These are the types of "mere employment disputes" for which a claim

for intentional infliction of emotional distress will not lie under Texas law. *See Johnson*, 965 F.2d at 33 (recognizing liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities").

It should also be noted that where, as here, the gravamen of an employee's complaint is already the subject of a statutory remedial scheme such as the ADEA, the employee cannot maintain an intentional infliction of emotional distress claim under Texas law. *Hoffman-La Roche Inc. v. Zeltwinger*, 144 S.W.3d at 447-48. When asked at her deposition if there was any extreme or outrageous conduct different or distinct from the conduct that Pree alleges was discriminatory or retaliatory, Pree admitted: "They were both the same." As such, the conduct on which she premises the state law claim is the same as that giving rise to age discrimination under the ADEA.

For all these reasons, Pree's intentional infliction of emotion distress claim arising under Texas law is subject to dismissal.

## V. CONCLUSION

It is for all these reasons that the Court granted defendant Farmers' motion for summary judgment and dismissed plaintiff's claims with prejudice.

**SIGNED** this the **27** day of **March, 2013.**

_____
Thad Heartfield
United States District Judge